# ⌐COPY

1 | SETH ARONSON (S.B. #100153)
2 | AMY J. LONGO (S.B. #198304)
  | KATHARINE S. MERCER (S.B. #267006)
3 | O'MELVENY & MYERS LLP
  | 400 South Hope Street
4 | Los Angeles, CA 90071-2899
  | Telephone: (213) 430-6000
5 | Facsimile: (213) 430-6407
6 | saronson@omm.com
  | alongo@omm.com
7 | kmercer@omm.com

8

9 | Attorneys for Defendant John L. Clendenin

10

```
FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

    FEB 2 9 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEP
```

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| YIN SHEN, derivatively on behalf of POWERWAVE TECHNOLOGIES, INC., | Case No.: SACV12 -317 CJC (ANx) |
| Plaintiff, | **NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1441(a)** |
| v. | |
| RONALD J. BUSCHUR, KEVIN T. MICHAELS, MOIZ M. BEGUWALA, KEN J. BRADLEY, RICHARD E. BURNS, JOHN L. CLENDENIN, DAVID L. GEORGE, EUGENE E. GODA, AND CARL W. NEUN, | # By Fax |
| Defendants, | |
| And | |
| POWERWAVE TECHNOLOGIES, INC., | |
| Nominal Defendant | |

NOTICE OF REMOVAL

0

PLEASE TAKE NOTICE THAT DEFENDANT JOHN L. CLENDENIN, a resident of Florida, hereby removes to this Court the state court action described below:

1.    On February 23, 2012, an action was commenced in the Superior Court for the County of Orange, entitled *Yin Shen, derivatively on behalf of Powerwave Technologies, Inc. v. Ronald J. Buschur, Kevin T. Michaels, Moiz M. Beguwala, Ken J. Bradley, Richard E. Burns, John L. Clendenin, David L. George, Eugene E. Goda, and Carl W. Neun, Defendants, and Powerwave Technologies, Inc., Nominal Defendant,* as Case No. 30-2012-00547940-CU-BT-CJC. A copy of the Complaint is attached as Exhibit A.

2.    Defendant John L. Clendenin appeared and accepted service of process in this action. A copy of the notice of appearance is attached as Exhibit B.

3.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by John L. Clendenin, pursuant to the provisions of 28 U.S.C. § 1441(a) in that it is a civil action wherein the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.    Plaintiff's complaint does not specifically state the amount of alleged damages. Defendant is informed and believes however that based on the allegations alleged in the complaint that the damages alleged are in excess of $75,000.

5.    Plaintiff's complaint does not identify the plaintiff's citizenship. The complaint, however, does not include the absence of diversity jurisdiction. Therefore, by negative implication, defendant believes that the plaintiff is not a citizen of any state in which one of the defendants is a citizen.

6.    Defendant is informed and believes that none of the other defendants have been served in this action. *See* 28 U.S.C. § 1441(b) (diversity action is removable only if none of the "parties in interest properly joined and

NOTICE OF REMOVAL

1    served as defendants is a citizen of the State in which such action is brought");

2    *Cucci v. Edwards*, 510 F. Supp. 2d 479, 482 (C.D. Cal. 2007) ("a resident

3    defendant who has not been served may be ignored in determining removability");

4    *Republic Western Ins. Co. v. International Ins. Co.*, 765 F. Supp. 628, 629 (N.D.

5    Cal. 1991) ("Because Industrial Indemnity had not yet been served at the time that

6    First State filed its removal petition, the language of § 1441(b) mandates the finding

7    that this case was properly removed.").

8           7.     At the time of the filing of this action, John L. Clendenin was,

9    and still is, a resident of the state of Florida.

10          8.     Accordingly, all of the requirements of 28 U.S.C. § 1332 are

11   present and less then 30 days have elapsed between the filing of this suit and this

12   Notice of Removal as required by 28 U.S.C. § 1446(b), therefore this action may

13   properly be removed to this Court under 28 U.S.C. § 1441(a).

14

15   Dated: February 29, 2012                SETH ARONSON
                                              AMY J. LONGO
16                                            KATHARINE S. MERCER
                                              O'MELVENY & MYERS LLP
17                                            400 S. Hope Street
                                              Los Angeles, CA 90071
18                                            (213) 430-6000 (Telephone)
                                              (213) 430-6407 (Facsimile)
19

20

21                                            By: *Amy J. Longo*
22                                                Amy J. Longo
                                              Attorneys for Defendant
23                                            John L. Clendenin

24

25

26

27

28

NOTICE OF REMOVAL

# EXHIBIT A

JOHNSON & WEAVER, LLP
Frank J. Johnson (SBN 174882)
frankj@johnsonandweaver.com
Shawn E. Fields (SBN 255267)
shawnf@johnsonandweaver.com
110 West "A" Street, Suite 750
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856

*Attorneys for Plaintiff*

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
02/23/2012 at 09:54:40 AM
Clerk of the Superior Court
By Sonya Wilson, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| YIN SHEN, derivatively on behalf of POWERWAVE TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> RONALD J. BUSCHUR, KEVIN T. MICHAELS, MOIZ M. BEGUWALA, KEN J. BRADLEY, RICHARD E. BURNS, JOHN L. CLENDENIN, DAVID L. GEORGE, EUGENE L. GODA, and CARL W. NEUN, <br><br> Defendants, <br><br> and <br><br> POWERWAVE TECHNOLOGIES, INC., <br><br> Nominal Defendant. | Case No.: 30-2012-00547940-CU-BT-CJC <br><br> Judge Nancy Wieben Stock <br><br> SHAREHOLDER DERIVATIVE COMPLAINT <br><br> DEMAND FOR JURY TRIAL |

SHAREHOLDER DERIVATIVE COMPLAINT

By and through his undersigned counsel, Plaintiff Yin Shen ("Plaintiff") brings this shareholder derivative action on behalf of Powerwave Technologies, Inc. ("Powerwave" or the "Company") and against certain current and former officers and directors of the Company for breaches of fiduciary duties and unjust enrichment.  Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which include, without limitation: a) review and analysis of public filings made by Powerwave and other related parties and non-parties with the U.S. Securities and Exchange Commission ("SEC"); b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; c) review of news articles, shareholder communications, postings on Powerwave's website concerning the Company's public statements; and d) review of other publicly available information concerning Powerwave and the Individual Defendants (defined herein).

## I.   INTRODUCTION

1.   Powerwave engages in the design, manufacture, marketing, and sale of wireless solutions for wireless communications networks worldwide.  The Company offers antennas, boosters, combiners, cabinets, shelters, filters, radio frequency power amplifiers, remote radio head transceivers, repeaters, tower-mounted amplifiers, and advanced coverage solutions for use in frequency bands, including cellular, PCS, 3G, and 4G wireless communications networks.

2.   While Powerwave markets and sells a number of products related to cell phone towers, its core product is its widely sold antenna system.  According to the Company's November 1, 2011, Form 10-Q filed with the SEC, antenna system sales accounted for 59% of the Company's revenues in the third quarter of 2011.

3.   From approximately February 1, 2011, to October 18, 2011 (the "Relevant Period"), the Individual Defendants caused the Company to make a series of materially misleading statements about its financial condition, including its quarterly revenues, its projected future revenues, and its free cash flows.  In particular, throughout the Relevant

Period, the Individual Defendants caused the Company to publish numerous statements with the SEC outlining Powerwave's strong year-over-year earnings and projected earnings increases throughout 2011 and beyond.  However, in each of these statements the Individual Defendants failed to disclose two critically important known facts about Powerwave's operations:

> 1) That sales of its antenna systems were falling dramatically across the board, including drops of over 50% in the Company's North America, Asia Pacific, and Middle East markets; and
>
> 2) That, as a result, Powerwave was required to burn through its free cash flows as revenues declined and expenses increased.

4.     These material omissions caused Powerwave's stock to trade at artificially inflated prices throughout the Relevant Period, reaching a high of $23.45 on May 2, 2011.

5.     Finally, on October 18, 2011, the Individual Defendants were forced to reveal the truth about the Company's poor financial health.  In a press release and conference call disclosing the Company's third quarter 2011 financial results, the Individual Defendants released earnings well below analysts' expectations and their own previously issued guidance. The Individual Defendants finally disclosed that Powerwave was experiencing "a significant slowdown in spending by North American network operators," and that the Company was drawing heavily on its free cash flows to meet its financial obligations.

6.     Following this announcement, the share price of Powerwave's common stock nosedived, falling 42% from $1.46 to $0.85 on the heaviest recorded trading volume in the Company's history.

7.     The Powerwave Board of Directors ("Board") has not, and will not commence litigation against Defendants, let alone vigorously prosecute such claims, because they face a substantial likelihood of liability to Powerwave for authorizing or failing to correct the false and misleading statements alleged herein.  Accordingly, a pre-suit demand upon the Powerwave Board is a useless and futile act.  Thus, Plaintiff rightfully brings this action to

vindicate Powerwave's rights against its wayward fiduciaries and hold them responsible for the damages they have caused Powerwave.

## II.   JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to the California Constitution, Article VI, §10 and California Corporations Code §800. The amount in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of this Court.

9.     A true and correct copy of this Complaint was delivered to Powerwave before its filing with the Court.

10.     Venue is proper in this Court because Powerwave has a substantial presence in California and is headquartered in Santa Ana, California. Moreover, each defendant has had extensive contacts with California as a director and/or officer of Powerwave or otherwise, which makes the exercise of personal jurisdiction over them proper.

## III.   THE PARTIES

11.     Plaintiff is a shareholder of Powerwave common stock and has continuously held the stock throughout the Relevant Period.

12.     Nominal Defendant Powerwave is a Delaware corporation with its principal place of business located at 1801 East Saint Andrew Place, Santa Ana, California 92705.

13.     Defendant Ronald J. Buschur ("Buschur") has been the Chief Executive Officer of Powerwave and a member of the Board since February 2005. Buschur joined the Company in June 2001 as Chief Operating Officer. In May 2004, Buschur became President of the Company.

14.     Defendant Kevin T. Michaels ("Michaels") is presently Chief Financial Officer and Secretary of Powerwave. Michaels joined the Company in June 1996 as Vice President, Finance and Chief Financial Officer and was appointed Secretary in June 1996. Michaels was named Senior Vice President, Finance in February 2000.

15. Defendant Moiz M. Beguwala ("Beguwala") has been a member of Powerwave's Board since December 2007. Beguwala is currently a member of the Board's Compensation Committee and Nominating and Corporate Governance Committee.

16. Defendant Ken J. Bradley ("Bradley") has been a member of Powerwave's Board since December 2007. Bradley is currently a member of the Board's Audit Committee and Nominating and Corporate Governance Committee.

17. Defendant Richard E. Burns ("Burns") has been a member of Powerwave's Board since March 2011. Burns is currently a member of the Board's Audit Committee and Nominating and Corporate Governance Committee.

18. Defendant John L. Clendenin ("Clendenin") has been a member of Powerwave's Board since February 2005. Clendenin is currently a member of the Board's Audit Committee and Nominating and Corporate Governance Committee.

19. Defendant David L. George ("George") has been a member of Powerwave's Board since November 1995. George is currently a member of the Board's Compensation Committee and Nominating and Corporate Governance Committee.

20. Defendant Eugene L. Goda ("Goda") has been a member of Powerwave's Board since November 1995. Goda is currently a member of the Board's Compensation Committee and Nominating and Corporate Governance Committee.

21. Defendant Carl W. Neun ("Neun") has been a member of Powerwave's Board since February 2000. Neun is currently a member of the Board's Audit Committee and Nominating and Corporate Governance Committee.

22. Defendants Buschur, Beguwala, Bradley, Burns, Clendenin, George, Goda, and Neun are all current Board members and are collectively referred to as the "Board" or the "Director Defendants."

23. Defendants Buschur, Beguwala, Bradley, Burns, Clendenin, George, Goda, Neun, and Michaels are collectively referred to as the "Individual Defendants."

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Background

24.    Powerwave engages in the design, manufacture, marketing, and sale of wireless solutions for wireless communications networks worldwide. The Company offers antennas, boosters, combiners, cabinets, shelters, filters, radio frequency power amplifiers, remote radio head transceivers, repeaters, tower-mounted amplifiers, and advanced coverage solutions for use in frequency bands, including cellular, PCS, 3G, and 4G wireless communications networks.

25.    While Powerwave sells a number of different types of equipment, the Company's core product is its antenna system that Powerwave sells to wireless carriers such as Verizon, AT&T and Sprint.

### B.    The Individual Defendants Fail to Disclose to Investors the Company's Dramatically Declining Customer Demand

26.    On February 1, 2011, Powerwave issued a press release announcing its financial results for its fourth quarter, the period ending January 2, 2011. For the quarter, the Company reported net sales of $175.6 million, compared to $142.6 million for the same period the prior year. The press release included Defendant Buschur's comments on these results, who observed that, "[f]or the fourth quarter of 2010, we were able to show growth of 23% over the same period last year and 12% sequentially over the third quarter of this year." Defendant Buschur further stated that Powerwave expected this positive trend to continue into 2011 specifically because of continued growing customer demand:

> We continue to see signs of improvement in overall demand for wireless infrastructure equipment, driven globally by the continued increase in demand for smartphones and the requirements for faster data transmission rates. We are continuing to work to position Powerwave to capitalize on the long-term growth opportunities we believe are available within the global wireless infrastructure marketplace.

27.    Following the issuance of the press release, also on February 1, 2011, Powerwave held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, Defendants Michaels and Buschur made

1    positive statements about the Company and its operations, and again emphasized that
2    continued increased customer demand for Powerwave's products would continue to drive
3    increased revenues throughout 2011.

4         28.    Both the press release and the statements from the conference call were
5    materially misleading because they failed to disclose that Powerwave's customer demand for
6    its antenna systems in North America, as well as in the Middle East and Asia Pacific markets,
7    was already falling dramatically, and thus were likely to negatively impact the Company's
8    revenues and cash flows throughout 2011 and beyond.

9         29.    Following the issuance of this misleading press release, the share price of
10   Powerwave's stock began climbing steadily from $3.48 on February 1, 2011, to $4.66 on
11   March 23, 2011.

12        30.    On May 5, 2011, Powerwave issued a press release announcing its financial
13   results for its first quarter, the period ending April 3, 2011. For the quarter, the Company
14   reported net sales of $136.6 million, compared to $114.5 million for the same period the prior
15   year. While Powerwave reported a year-over-year increase in net sales, the Individual
16   Defendants recognized that these earnings results were slightly lower than previously
17   projected and predicted by analysts. As a result, the press release quoted Defendant Buschur
18   as stating that "[t]he first quarter revenue was impacted by delays we encountered ramping up
19   one of our new LTE products. We believe that we have resolved the production issues that
20   impacted our revenues for the first quarter."

21        31.    Defendant Buschur continued that, with the production issue behind it,
22   "[l]ooking ahead for the remainder of this year, we continue to believe that we are on track for
23   meeting our annual revenue guidance." Defendant Buschur again discussed the Company's
24   customer demand, stating that "[t]here are signs of improving demand for global wireless
25   infrastructure for the remainder of 2011. We believe that Powerwave is in an excellent
26   position to build upon and capture the long-term growth opportunities that are in the wireless
27   infrastructure marketplace."

28

32.     Following the issuance of the press release on May 5, 2011, Powerwave held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, Defendants Michaels and Buschur made numerous positive statements about the Company, its operations, and growing customer demand.

33.     This press release and conference call were materially misleading because they failed to disclose that the Company's customer demand for Powerwave's antenna systems, particularly in North America, was continuing to crater and was having a significant negative impact on earnings. The Individual Defendants' attempt to blame Powerwave's earnings miss on a one-time production issue was also materially misleading because it hid from investors the true cause of the Company's lower than expected revenues – declines in customer demand – and attempted to characterize any earnings miss as the result of a single event rather than a long-term systemic problem.

34.     On July 12, 2011, Powerwave issued a press release to provide a "Second Quarter Update." The Company reported that for its second fiscal quarter, the period ending July 3, 2011, it "anticipates that revenues for its fiscal second quarter ended July 3, 2011 will be in the range of $168 million to $172 million. This updates Powerwave's previously announced expectations of revenues for the second quarter." Defendant Buschur commented on the announcement, hinting to investors about "some slowness in several of our markets," but failing to offer any detail or make substantive comments regarding this "slowness." In fact, Defendant Buschur continued to make misleadingly upbeat comments about Powerwave's customer demand, stating that "in spite of [this] slowness," Powerwave was "able to increase revenues by over 24 percent from the first quarter . . . [and] we continue to believe that we are on track for meeting the bottom range of our 2011 annual revenue guidance of $650 to $680 million. We continue to believe that Powerwave is in an excellent position to build upon and capture the long-term growth opportunities that are in the wireless infrastructure marketplace."

35.     This press release was also materially misleading because it failed to disclose the continuing dramatic decline in customer demand of Powerwave's antenna systems.  It also misled investors by failing to disclose that Powerwave was compensating for these declines by drawing heavily on its free cash flows, burning through its dwindling reserves.

36.     Following this announcement, the price of Powerwave common stock declined modestly from $2.33 to $2.10.  However, the Individual Defendants' decision to hide the truth from investors in this press release kept the Company's stock from falling further.

37.     One week later, on July 20, 2011, in the first hint that the Company was experiencing cash flow problems, Powerwave issued a press release announcing that it had entered into a purchase agreement in which it would issue an aggregate of $100 million of 2.75% Convertible Senior Subordinated Notes due in 2014.

38.     On August 4, 2011, Powerwave issued a press release announcing its financial results for its second quarter, the period ending July 3, 2011.  For the quarter, the Company reported net sales of $170.6 million, compared to $144.6 million for the same period the prior year.  In the press release, the Individual Defendants stated that, "[w]hile we are concerned about global macroeconomic issues, we continue to believe that we have positioned Powerwave to be in an excellent position from which to build upon and capture both the short-term and long-term growth opportunities that are in the global wireless infrastructure marketplace."

39.     Following the issuance of the press release, on August 4, 2011, Powerwave held a conference call with analysts and investors to discuss the Company's earnings and operations.  During the conference call, Defendants Michaels and Buschur made positive statements about the Company and its operations.

40.     This press release and conference call were materially misleading because they failed to disclose that the Company's customer demand for its antenna systems, particularly, in the North American market, was falling dramatically and that the Company likely would be

1   unable to meet its FY 2011 guidance.  They also failed to disclose that, as a result, Powerwave

2   was burning through its free cash flows to meet its obligations.

3       **C.      The Truth is Revealed**

4       41.     Finally, on October 18, 2011, the Individual Defendants could no longer

5   conceal the truth from investors.  On October 18, 2011, Powerwave issued a press release

6   announcing that "it anticipates that revenues for its fiscal third quarter ended October 2, 2011

7   will be in the range of $75 million to $79 million," reflecting an approximate *56% decline in*

8   *sequential revenues* from the second quarter of 2011.  Defendant Buschur commented on the

9   announcement, stating, in pertinent part, as follows:

> Our third quarter revenues were impacted by several factors, which included a
> significant slowdown in spending by North American network operators, a
> significant reduction in activity with our original equipment manufacturing
> customers, coupled with further weakness in several international markets,
> including Western and Eastern Europe, and the Middle East[.]  From a global
> perspective, we believe that the current economic environment has caused
> operators to reduce or postpone their spending plans for the near term while
> they evaluate the macro-economic pressures in each individual market.  The
> Middle East market has been significantly impacted by the political unrest
> throughout the region.  In addition, in the North American market we believe
> that the uncertainty arising from the government's recent opposition to the
> proposed merger of AT&T and T-Mobile, has led to delays in spending as these
> operators re-evaluate their capital spending plans.  All of these factors,
> combined together, have had a significant impact on our third quarter revenues.
> While near term visibility remains difficult in our markets, we continue to
> believe that the long-term demand for improvements in wireless infrastructure
> remain strong, as global demand for data continues and wireless network
> operators continue to promote their plans to improve existing coverage and add
> additional capacity, in the form of 4G capabilities, to wireless networks across
> the globe.  We believe that Powerwave remains positioned to build upon and
> capture the long-term growth opportunities that are in the wireless
> infrastructure marketplace.

24      42.     Following the issuance of the press release, Powerwave held a conference call

25  to discuss the announcement.  During the conference call, Defendants Michaels and Buschur

26  admitted that the Company was performing poorly and burning through a substantial amount

27  of free cash.

28

43.     In response to the announcement, on October 19, 2011, the price of Powerwave common stock declined from $1.46 per share to $0.85 per share, or 42%, on extremely heavy trading volume.

44.     On October 28, 2011, Powerwave issued a press release announcing that its Board had approved a 1-for-5 reverse stock split and a reduction in the number of authorized shares of its common stock.

45.     On November 1, 2011, Powerwave issued a press release announcing its financial results for its third fiscal quarter, the period ending October 2, 2011. The Company reported a net loss of $35.1 million, or a basic loss per share of $1.09. This press release further disclosed the extremely troubling news regarding the Company's previously undisclosed drops in customer demand and dwindling cash flows, including:

- Revenues: Year over year revenues dropped over 54% in the North America region, nearly 57% in the Asia Pacific region, and 41.5% in Europe, Africa, and the Middle East; and

- Cash Flows: The Company burned through $16 million in cash in the first three quarters, leaving it with only $46.6 million in cash reserves.

46.     Defendant Buschur commented on the results, stating, in pertinent part, as follows:

> As we have previously reported, our third quarter revenues were impacted by several factors, which included significant slowdowns in several of our markets, including North America, Western and Eastern Europe and the Middle East, as well as our original equipment manufacturing customers[.] From a global perspective, we believe that the current economic environment has caused operators to reduce or postpone their spending plans for the near term while they evaluate the macro-economic pressures in each individual market. While near term visibility remains difficult in our markets, we continue to believe that the long-term demand for improvements in wireless infrastructure remain strong, as global demand for data continues and wireless network operators continue to promote their plans to improve existing coverage and add additional capacity, in the form of 4G capabilities, to wireless networks across the globe. We are currently finalizing our restructuring plans in order to take the steps we believe necessary to maintain Powerwave's competitive position and continue to position Powerwave for long-term success.

## V.   DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.   Fiduciary Duties

47.     By reason of their positions as officers, directors, and/or fiduciaries of Powerwave and because of their ability to control the business and corporate affairs of Powerwave, the Individual Defendants owed and owe the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Powerwave in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Powerwave and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

48.     Each director and officer of the Company owes to Powerwave and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

### B.   Audit Committee Duties

49.     In addition to these duties, the members of the Audit Committee owed specific duties to Powerwave under the Audit Committee's Charter to review and approve quarterly and annual financial statements, earnings press releases, and to ensure that the Company had appropriate and effective internal controls over financial reporting.  In particular, the Audit Committee's Charter provided as follows:

The responsibilities of the Audit Committee shall include:

☐   Reviewing on a continuing basis the adequacy of the Company's system of internal controls, including meeting periodically with the Company's management and the independent auditors

to review the adequacy of such controls and to review before release the disclosure regarding such system of internal controls required under SEC rules to be contained in the Company's periodic filings and the attestations or reports by the independent auditors relating to such disclosure;

☐ Appointing, compensating, retaining and overseeing the work of the independent auditors (including resolving disagreements between management and the independent auditors regarding financial reporting) for the purpose of preparing or issuing an audit report, performing other audit, review or attest services or related work;

☐ Pre-approving audit and non-audit services provided to the Company by the independent auditors (or subsequently approving non-audit services in those circumstances where a subsequent approval is necessary and permissible); in this regard, the Audit Committee shall have the sole authority to approve the hiring and firing of the independent auditors, ensuring audit partner rotation in accordance with SEC rules, all audit engagement fees and terms, and all non-audit engagements, as may be permissible, with the independent auditors;

☐ Reviewing and providing guidance with respect to the external audit and the Company's relationship with its independent auditors by (i) reviewing the independent auditors' proposed audit scope, approach and independence; (ii) obtaining on a periodic basis a statement from the independent auditors regarding relationships and services with the Company which may impact independence and presenting this statement to the Board of Directors, and to the extent there are relationships, monitoring and investigating them; (iii) discussing with the Company's independent auditors the financial statements and audit findings, including any significant adjustments, management judgments and accounting estimates, significant new accounting policies and disagreements with management and any other matters described in SAS No. 61, as may be modified or supplemented; (iv) obtain from the independent auditor assurance that Section 10A(b) of the Exchange Act has not been implicated; and (v) reviewing reports submitted to the audit committee by the independent auditors in accordance with the applicable SEC requirements;

☐ Reviewing and discussing with management and the independent auditors the annual audited financial statements and quarterly unaudited financial statements, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," prior to filing the Company's Annual Report on Form 10-K and Quarterly Reports on Form 10-Q, respectively, with the SEC;

☐ Directing the Company's independent auditors to review before filing with the SEC the Company's interim financial statements included in Quarterly Reports on Form 10-Q, using professional standards and procedures for conducting such reviews;

☐ Conducting a post-audit review of the financial statements and audit findings, including any significant suggestions for improvements provided to management by the independent auditors;

☐ Reviewing before release the unaudited quarterly operating results in the Company's quarterly earnings release;

☐ Overseeing compliance with the requirements of the SEC for disclosure of auditor's services and audit committee members, member qualifications and activities;

☐ Reviewing, approving and monitoring the Company's code of ethics for its directors, officers and employees which complies with the requirements of the NASD and the SEC;

☐ Reviewing with management the procedures adopted by management for making written descriptions of the Company's critical accounting policies and practices available to those employees who record or review the recording of revenue and in this regard, it shall be the policy of the Audit Committee to require management to make available such descriptions to those employees who record or review the recording of revenue;

☐ Reviewing, at each regularly scheduled meeting, all Company investments in securities and, at least annually, obtain a stress test or market-to-market valuation of such investments;

☐ Receiving and reviewing any complaints or reports by independent legal counsel regarding evidence of material violations of securities laws or breaches of fiduciary duties as required by SEC rules;

☐ Periodically reviewing any legal matters that could reasonably be expected to have a material impact on the Company's financial statements and shall meet as needed with the Company's independent legal counsel or other employees responsible oversight of litigation;

☐ Periodically reviewing the Company's guidelines and policies with respect to risk assessment and risk management guidelines and meet as needed with appropriate risk personnel;

☐ Overseeing and reviewing the Company's policies regarding information technology and management information systems;

☐ If necessary, instituting special investigations with full access to all books, records, facilities and personnel of the Company;

☐ As appropriate, obtaining advice and assistance from independent legal, accounting or other advisors and the Audit Committee shall have the authority to engage and determine funding for independent legal, accounting or other advisors;

☐ Reviewing and approving in advance any proposed related party transactions;

☐ Reviewing and assessing the adequacy of its own charter, structure, processes and membership requirements on an annual basis;

☐ Submit the Audit Committee charter to the Board of Directors for approval and have the charter published at least every three years per SEC rules;

☐ Providing a report in the Company's proxy statement in accordance with the rules and regulations of the SEC; and

☐ Establishing procedures for receiving, retaining and treating complaints received by the Company regarding accounting, internal accounting controls or auditing matters and procedures for the confidential, anonymous submission by employees of concerns regarding questionable accounting or auditing matters.

**C.     Control, Access, And Authority**

50.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Powerwave, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Powerwave.

51.     Because of their advisory, executive, managerial, and directorial positions with Powerwave, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of Powerwave.

52.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Powerwave, and was at all times acting within the course and scope of such agency.

**D.     Reasonable And Prudent Supervision**

53.     To discharge their duties, the officers and directors of Powerwave were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Powerwave were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results;

(d)     remain informed as to how Powerwave conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or

14

practices and make such disclosures as necessary to comply with securities laws; and

(c)      ensure that Powerwave was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## VI.   BREACHES OF DUTIES

54.    Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to Powerwave and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of Powerwave, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Powerwave, the absence of good faith on their part, and a reckless disregard for their duties to Powerwave and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to Powerwave.

55.    The Individual Defendants each breached their duty of loyalty and good faith by allowing Defendants to cause, or by themselves causing, the Company to make false and/or misleading statements that misled shareholders into believing that demand for Powerwave's core antenna systems was growing and that Powerwave would experience revenue growth throughout 2011, when in fact demand was declining rapidly, requiring the Company to burn through its cash reserves. In addition, as a result of the Individual Defendants' illegal actions and course of conduct, the Company is now the subject of a class action lawsuit that alleges violations of the federal securities laws. As a result, Powerwave has expended, and will continue to expend, significant sums of money to rectify the Defendants' wrongdoing.

## VII.   CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

56.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert

with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

57.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to mislead shareholders into believing that demand for Powerwave's core antenna systems was growing and that Powerwave would experience revenue growth throughout 2011, when in fact demand was declining rapidly, requiring the Company to burn through its cash reserves. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

58.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (a) disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; and (b) disguise and misrepresent the Company's future business prospects.

59.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently release improper statements. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

60.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commissions of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## VIII.   DAMAGES TO POWERWAVE

61.   As a result of the Individual Defendants' wrongful conduct, Powerwave disseminated false and misleading statements. The improper statements have devastated Powerwave's credibility. Additionally, Powerwave is now the subject of a securities fraud class action lawsuit. The Company will face substantial costs in connection with an investigation and the lawsuit.

62.   As a direct and proximate result of the Individual Defendants' actions as alleged above, Powerwave's market capitalization has been substantially damaged.

63.   Further, as a direct and proximate result of the Individual Defendants' conduct, Powerwave has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

a.   costs incurred in investigating and defending Powerwave and certain officers in a class action lawsuit, plus potentially hundreds of millions of dollars in settlement or to satisfy an adverse judgment;

b.   costs incurred from compensation and benefits paid to the Individual Defendants, which compensation was based at least in part on Powerwave artificially-inflated stock price and inflated revenues; and

c.   costs incurred from the loss of the Company's customers' confidence in Powerwave services.

64.   Moreover, these actions have irreparably damaged Powerwave's corporate image and goodwill. For at least the foreseeable future, Powerwave will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Powerwave's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## IX.   DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

65.     Plaintiff brings this action derivatively in the right and for the benefit of Powerwave to redress injuries suffered, and to be suffered, by Powerwave as a direct result of the Individual Defendants' breaches of fiduciary duty and unjust enrichment by the Individual Defendants. Powerwave is named as a nominal defendant solely in a derivative capacity.

66.     Plaintiff will adequately and fairly represent the interests of Powerwave in enforcing and prosecuting its rights.

67.     Plaintiff was a shareholder of Powerwave common stock at the time of the wrongdoing of which Plaintiff complains and has been continuously since.

68.     Plaintiff did not make a pre-suit demand on the Board to pursue this action, because such a demand would have been a futile and wasteful act.

69.     The Board of Powerwave currently consists of the following eight Defendants: Buschur, Beguwala, Bradley, Burns, Clendenin, George, Goda, and Neun.

### A.   Demand Is Futile As To Defendant Buschur

70.     Defendant Buschur faces a substantial likelihood of liability for his individual misconduct. Buschur is a named defendant in a federal class action pending in the Central District of California alleging that he and the Company violated §10(b) of the 1934 Act and Rule 10b-5 when he disseminated or approved false statements.

71.     If Defendant Buschur pursued these derivative claims, then that would expose his own misconduct in the class action for violations of the federal securities laws. This, in turn, would impair the defense of the class action and greatly increase the probability of Defendant Buschur's personal liability in the class action. As such, Defendant Buschur is fatally conflicted, and therefore, unable to render a disinterested decision as to whether the Company should pursue these derivative claims. Thus, demand is futile as to Defendant Buschur.

72.     Additionally, Defendant Buschur cannot render an independent decision because he is and was a high-ranking officer of Powerwave during the time period when the

1   wrongdoing occurred.  Defendant Buschur has served as the Chief Executive Officer of

2   Powerwave since February 2005.  According to relevant portions of the Company's 2011

3   proxy statement, Defendant Buschur is not an independent director.  Thus, Defendant Buschur

4   is a current Company insider and therefore cannot independently consider a demand.

5          73.     Additionally, Defendant Buschur is interested because he issued many of the

6   misleading statements.  Defendant Buschur therefore faces a substantial likelihood of liability

7   for breaching his fiduciary duties to Powerwave shareholders.  Consequently, Defendant

8   Buschur cannot disinterestedly consider a demand.

9      **B.     Demand Is Futile As To Defendant Beguwala**

10         74.     Defendant Beguwala faces a substantial likelihood of liability for his individual

11  misconduct.  Defendant Beguwala was a director throughout the Relevant Period, and as such

12  had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases,

13  and other public statements on behalf of the Company were true.  Instead, he reviewed and

14  authorized the publication of materially false and misleading statements throughout the

15  Relevant Period that caused the Company's stock to trade at artificially inflated prices.  This

16  authorization of such statements and/or failure to correct them constitutes a breach of fiduciary

17  duty, for which Defendant Beguwala faces a substantial likelihood of liability.  For this reason

18  demand is futile.

19     **C.     Demand Is Futile As To Defendant Bradley**

20         75.     Defendant Bradley faces a substantial likelihood of liability for his individual

21  misconduct.  Defendant Bradley was a director throughout the Relevant Period, and as such

22  had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases,

23  and other public statements on behalf of the Company were true.  Instead, he reviewed and

24  authorized the publication of materially false and misleading statements throughout the

25  Relevant Period that caused the Company's stock to trade at artificially inflated prices.  This

26  authorization of such statements and/or failure to correct them constitutes a breach of fiduciary

27

28

duty, for which Defendant Bradley faces a substantial likelihood of liability.  For this reason demand is futile.

76.     Defendant Bradley, as an Audit Committee member, was responsible for reviewing and approving quarterly and annual financial statements, earnings press releases, and Powerwave's internal controls over financial reporting.  Despite these duties, Defendant Bradley knowingly or recklessly reviewed and approved false financial statements and press releases.  Accordingly, Defendant Bradley faces a sufficiently substantial likelihood of liability for breach of his fiduciary duties of loyalty and good faith.  Any demand upon this Defendant is futile.

**D.     Demand Is Futile As To Defendant Burns**

77.     Defendant Burns faces a substantial likelihood of liability for his individual misconduct.  Defendant Burns was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true.  Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices.  This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Burns faces a substantial likelihood of liability.  For this reason demand is futile.

78.     Defendant Burns, as an Audit Committee member, was responsible for reviewing and approving quarterly and annual financial statements, earnings press releases, and Powerwave's internal controls over financial reporting.  Despite these duties, Defendant Burns knowingly or recklessly reviewed and approved false financial statements and press releases.  Accordingly, Defendant Burns faces a sufficiently substantial likelihood of liability for breach of his fiduciary duties of loyalty and good faith.  Any demand upon this Defendant is futile.

### E.   Demand Is Futile As To Defendant Clendenin

79.   Defendant Clendenin faces a substantial likelihood of liability for his individual misconduct. Defendant Clendenin was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true. Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices. This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Clendenin faces a substantial likelihood of liability. For this reason demand is futile.

80.   Defendant Clendenin, as an Audit Committee member, was responsible for reviewing and approving quarterly and annual financial statements, earnings press releases, and Powerwave's internal controls over financial reporting. Despite these duties, Defendant Clendenin knowingly or recklessly reviewed and approved false financial statements and press releases. Accordingly, Defendant Clendenin faces a sufficiently substantial likelihood of liability for breach of his fiduciary duties of loyalty and good faith. Any demand upon this Defendant is futile.

### F.   Demand Is Futile As To Defendant George

81.   Defendant George faces a substantial likelihood of liability for his individual misconduct. Defendant George was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true. Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices. This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant George faces a substantial likelihood of liability. For this reason demand is futile.

### G.  Demand Is Futile As To Defendant Goda

82.  Defendant Goda faces a substantial likelihood of liability for his individual misconduct. Defendant Goda was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true. Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices. This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Goda faces a substantial likelihood of liability. For this reason demand is futile.

### H.  Demand Is Futile As To Defendant Neun

83.  Defendant Neun faces a substantial likelihood of liability for his individual misconduct. Defendant Neun was a director throughout the Relevant Period, and as such had a fiduciary duty to ensure that the Company's public filings with the SEC, press releases, and other public statements on behalf of the Company were true. Instead, he reviewed and authorized the publication of materially false and misleading statements throughout the Relevant Period that caused the Company's stock to trade at artificially inflated prices. This authorization of such statements and/or failure to correct them constitutes a breach of fiduciary duty, for which Defendant Neun faces a substantial likelihood of liability. For this reason demand is futile.

84.  Defendant Neun, as an Audit Committee member, was responsible for reviewing and approving quarterly and annual financial statements, earnings press releases, and Powerwave's internal controls over financial reporting. Despite these duties, Defendant Neun knowingly or recklessly reviewed and approved false financial statements and press releases. Accordingly, Defendant Neun faces a sufficiently substantial likelihood of liability for breach of his fiduciary duties of loyalty and good faith. Any demand upon this Defendant is futile.

### I.    Demand Is Futile As To All Directors For Additional Reasons

85.    If Powerwave's current officers and directors are protected against personal liability for their acts of mismanagement, abuse of control, and breaches of fiduciary duties alleged in this Complaint by D&O Insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.,* monies belonging to the shareholders. However, Plaintiff is informed and believes that the D&O Insurance policies covering the Individual Defendants in this case contain provisions that eliminate coverage for any action brought directly by Powerwave against the Individual Defendants, known as the "insured versus insured exclusion." As a result, if the Director Defendants were to sue themselves or certain of the officers of Powerwave, there would be no D&O Insurance protection, and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. Therefore, the Director Defendants cannot be expected to file the claims asserted in this derivative lawsuit because such claims would not be covered under the Company's D&O Insurance policy.

86.    Under the factual circumstances described herein, the Individual Defendants are more interested in protecting themselves than they are in protecting Powerwave by prosecuting this action. Therefore, demand on Powerwave and its Board is futile and is excused.

87.    Powerwave has been and will continue to be exposed to significant losses due to the Individual Defendants' wrongdoing. Yet, the Director Defendants have not filed any lawsuits against themselves or others who were responsible for the wrongful conduct. Thus, the Director Defendants are breaching their fiduciary duties to the Company and face a sufficiently substantial likelihood of liability for their breaches, rendering any demand upon them futile.

88.    A true and correct copy of this complaint was delivered to Powerwave prior to being filed with this Court.

SHAREHOLDER DERIVATIVE COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT I

### Against The Individual Defendants For Breach Of Fiduciary Duty

89.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

90.     The Individual Defendants owed and owe Powerwave fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Powerwave the highest obligation of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision.

91.     The Individual Defendants violated and breached their fiduciary duties of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision.

92.     The Individual Defendants each knowingly, recklessly or negligently approved the issuance of false statements that misrepresented and failed to disclose material information concerning the Company.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

93.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Powerwave has sustained significant damages.  As a result of the misconduct alleged herein, these Defendants are liable to the Company.

94.     Plaintiff, on behalf of Powerwave, has no adequate remedy at law.

## COUNT II

### Against The Individual Defendants For Unjust Enrichment

95.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Powerwave.

97.     The Individual Defendants were unjustly enriched as a result of the compensation they received while breaching their fiduciary duties owed to Powerwave.

24
SHAREHOLDER DERIVATIVE COMPLAINT

98.    Plaintiff, as a shareholder and representative of Powerwave, seeks restitution from these Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation obtained by these Defendants from their wrongful conduct and fiduciary breaches.

99.    Plaintiff, on behalf of Powerwave, has no adequate remedy at law.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Against all the Individual Defendants for the amount of damages sustained by the Company as a result of the Individual Defendants' violations of federal securities laws, breaches of fiduciary duties, and unjust enrichment;

B.    Directing Powerwave to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Powerwave and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

- a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

- a provision to permit the shareholders of Powerwave to nominate at least two candidates for election to the Board;

- a proposal to ensure the accuracy of the qualifications of Powerwave's directors, executives and other employees;

- a proposal to strengthen the Company's procedures for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal controls and auditing matters; and

- a provision to appropriately test and then strengthen the internal audit and control functions;

1         C.    Awarding to Powerwave restitution from the Individual Defendants, and each

2     of them, and ordering disgorgement of all profits, benefits and other compensation obtained by

3     the Individual Defendants;

4         D.    Awarding to Plaintiff the costs and disbursements of the action, including

5     reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

6         E.    Granting such other and further relief as the Court deems just and proper.

7     **XI.    JURY DEMAND**

8

9         Plaintiff demands a trial by jury.

10    Dated: February 23, 2012              JOHNSON & WEAVER, LLP

11

12

13                            By: _____

14                                SHAWN E. FIELDS

15                                *Attorneys for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT

# EXHIBIT B

1   SETH ARONSON (S.B. #100153)
     AMY J. LONGO (S.B. #198304)
2   KATHARINE S. MERCER (S.B. #267006)
     O'MELVENY & MYERS LLP
3   400 South Hope Street
     Los Angeles, CA  90071-2899
4   Telephone:  (213) 430-6000
     Facsimile:   (213) 430-6407
5   saronson@omm.com
     alongo@omm.com
6   kmercer@omm.com

7

8   Attorneys for Defendant John L. Clendenin

9

10           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                    **COUNTY OF ORANGE**

12

| | |
|---|---|
| 13  YIN SHEN, derivatively on behalf of POWERWAVE TECHNOLOGIES, 14  INC., | Case No.  30-2012-00547940-CU-BT-CJC |
| 15          Plaintiff, | Assigned to:  Judge Nancy Wieben Stock |
| | Department:  CX105 |
| 16      v. | **NOTICE OF GENERAL** |
| 17  RONALD J. BUSCHUR, KEVIN T. MICHAELS, MOIZ M. BEGUWALA, 18  KEN J. BRADLEY, RICHARD E. BURNS, JOHN L. CLENDENIN, 19  DAVID L. GEORGE, EUGENE E. GODA, AND CARL W. NEUN, | **APPEARANCE AND ACCEPTANCE OF SERVICE BY DEFENDANT JOHN L. CLENDENIN** |
| | <u>Action Filed:</u>  February 23, 2012 |
| 20        Defendants, | <u>JURY TRIAL DEMANDED</u> |
| 21 | |
| 22  And | |
| 23  POWERWAVE TECHNOLOGIES, INC., | |
| 24        Nominal Defendant | |

25

26

27       PLEASE TAKE NOTICE THAT DEFENDANT JOHN L. CLENDENIN,

28  by and through his undersigned attorneys, hereby appears before this Court and,

1

NOTICE OF GENERAL APPEARANCE
AND ACCEPTANCE OF SERVICE

1   accordingly, accepts service of process in the above-captioned case, filed on February 23,

2   2012, in the Superior Court for the County of Orange.  Cal. Code. Civ. Proc. § 410.50(a).

3

4   Dated: February 29, 2012

5                                               SETH ARONSON
                                                AMY J. LONGO
6                                               KATHARINE S. MERCER
                                                O'MELVENY & MYERS LLP
7                                               400 S. Hope Street
                                                Los Angeles, CA 90071
8                                               (213) 430-6000 (Telephone)
                                                (213) 430-6407 (Facsimile)

9

10                                              By: _Amy Longo/KSM_____
                                                    Amy J. Longo
11                                              Attorneys for Defendant
                                                John L. Clendenin
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                2                NOTICE OF GENERAL APPEARANCE
                                                 AND ACCEPTANCE OF SERVICE